1   Law Offices of Leslie Richards, P.C.
    Leslie Richards (CA SBN 94672)
2   15205 Burbank Boulevard, Suite A
    Sherman Oaks, California 91411
3   Tel:   (818) 997-9955
    Fax:   (818) 997-9965
4   ladylaw@leslierichards.com

5   Attorney for Plaintiffs,
    FAHMI EL MENOUFI, NEMRAC
6   HOSPITALITY GROUP, LLC

7

8                  **UNITED STATES DISTRICT COURT**

9                  **CENTRAL DISTRICT OF CALIFORNIA**

10

11  NEMRAC HOSPITALITY GROUP,          **CV10 1868** ◄ **R AJWx**
    LLC, a Nevada limited liability company;   CASE NO:
12  AMERICAN DIVERSIFIED
    MANAGEMENT, INC. a Nevada          **VERIFIED COMPLAINT FOR**
13  corporation; and FAHMI EL MENOUFI,  **DAMAGES**
    aka FRED MENOUFI, an individual and
14  ANTHONY M. HAISMAN, an
    individual, 222 w Houston Ave Trust  1. VIOLATION OF 18 USC § 1962(b),
15                                      (c) and (d) (RICO)
16       Plaintiffs,                    2. VIOLATION OF 18 USC § 1344(2);
                                        3. WRONGFUL FORECLOSURE
17  v.                                  4. INJUNCTION AGAINST
                                        FORECLOSURE PROCEEDINGS
18  WILSHIRE STATE BANK, a California   5. COLLUSION
    corporation; JOANNE KIM, an         6. FRAUD IN THE INDUCEMENT
19  individual; SEUNG HON KANG, and     7. BREACH OF THE IMPLIED
    individual; MICHELLE YUN, an        COVENANT OF GOOD FAITH AND
20  individual; DAYNA CHO, an individual;  FAIR DEALING
    TAESUNG JUHN, dba TOP REALTY;
21  YOUNG SOON JUHN, an individual;     8. BREACH OF FIDUCIARY DUTY
    STEVE SHIN, an individual; REMAX    9. COLLUSION
22  REALTY, a business entity of unknown  10. INTENTIONAL MISREPRESEN-
    form; GOLDENPARK, LLC, a California  TATION
23  limited liability company; SLEEPLAND,
    INC., a California corporation;
24  BESTLAND, LLC, a California limited  **DEMAND FOR TRIAL BY JURY**
    liability company; CATHERINE KYUNG
25  KIM, an individual; YOUNG H. SHIN, an
    individual; CHICAGO TITLE
26  COMPANY, a corporation; and DOES 1
    through 100, inclusive,
27
         Defendants.
28

1

1  COME NOW PLAINTIFFS NEMRAC HOSPITALITY GROUP, LLC.,

2  AMERICAN DIVERSIFIED MANAGEMENT, INC., FAHMI EL MENOUFI, aka

3  FRED MENOUFI, and ANTHONY M. HAISMAN and allege and complain as

4  follows.

5  <div align="center">**JURISDICTION**</div>

6      1.    This is an action for Fraud and RICO violations. The jurisdiction of this

7  Court over the subject matter of this action is predicated on 18 U.S.C. §§ 1962(b), (c),

8  and (d) and 1344(2) and 1952(a)(2) and 1952(a)(3). The amount in controversy

9  exceeds Thirty Million Dollars ($30,000,000.00).

10      2.    Venue is proper in this district because the acts and omissions of

11  Defendants, and each of them, discussed herein arose out of fraudulent transactions

12  which were generated out of the Plaintiff's offices located in Los Angeles, California.

13  Additionally Defendants, and each of them, conspired to commit and committed

14  fraudulent transactions and committed tortious acts related to such transactions in

15  California.

16  <div align="center">**PARTIES**</div>

17      3.    Plaintiffs, NEMRAC HOSPITALITY GROUP, LLC., a Nevada limited

18  liability company, hereinafter "NEMRAC" and AMERICAN DIVERSIFIED

19  MANAGEMENT, INC., a Nevada corporation, hereinafter "ADM," were and are at

20  all times relevant hereto business entities registered in and authorized to do business

21  and doing business in the State of California.

22      4.    Plaintiff FAHMI EL MENOUFI, aka FRED MENOUFI, (hereinafter

23  "MENOUFI") is and was at all times relevant hereto a resident of the State of

24  California, and was the managing member of Plaintiff NEMRAC.

25      5.    Plaintiff ANTHONY M. HAISMAN (hereinafter "HAISMAN") is and

26  was at all times relevant hereto a resident of the State of California and was the

27  President of plaintiff ADM.

28

6. Plaintiffs are informed and believe and thereon allege that at all times herein, defendant WILSHIRE STATE BANK, a corporation, (hereinafter "WSB") with offices located in Los Angeles, California and doing business in California and throughout the United States over the Internet. Defendant WSB is and was a banking institution, and as such, is and was governed by the laws, rules and of the United States of America and of the State of California concerning banking and lending.

7. Plaintiffs are informed and believe and based thereon allege that BESTLAND, LLC, was a California limited liability company, (hereinafter "BESTLAND"), with offices located in Los Angeles, and was operated as an Alter-Ego of CATHERINE KYUNG PARK; GOLDENPARK, LLC, (hereinafter "GOLDENPARK"), with an address in San Diego, California; SLEEPLAND, INC. (hereinafter "SLEEPLAND"), with principal offices in Buena Park, California, and CHICAGO TITLE COMPANY, a corporation with offices located in Glendale, California, were and are business entities authorized to do business and doing business in the State of California, County of Los Angeles.

8. Plaintiffs are informed and believe and based thereon allege that defendants JOANNE KIM, SEUNG HON KANG, DAYNA CHO, MICHELLE YUN, CATHERINE KYUNG KIM, TAESUNG JUHN, YOUNG SOON JUHN, STEVE SHIN, and YOUNG H. SHIN, were residents of and/or doing business in the State of California, County of Los Angeles.

9. Plaintiffs are informed and believe and based thereon allege that defendants CATHERINE KYUNG KIM, SEUNG HON KANG, TAESUNG JUHN, dba TOP REALTY, YOUNG SOON JUHN, and STEVE SHIN are or were real estate agents and/or brokers licensed to sell real estate in the State of California, and as such, had a duty to follow the laws governing real estate transactions in the State of California.

10. The true names and capacities of the defendants designated by the fictitious names DOES 1 through 100, inclusive, are unknown to plaintiffs at this

1   time. Plaintiffs will amend this complaint to show their true names and capacities

2   when ascertained. Plaintiffs are informed and believe and thereon allege that each

3   such fictitiously named defendant is responsible in some way for the matters

4   complained of herein.

5

6                              **GENERAL ALLEGATIONS**

7        11.    In doing the things complained of herein, each defendant acted with the

8   knowledge, approval, and by agency and authorization of each of the other

9   defendants.

10       12.    The property which is the subject of a dispute in this complaint is located

11   at 222 West Houston Avenue, Fullerton, California, 93832, commonly known as the

12   Anaheim Park Hotel, referred to hereinafter as "THE HOTEL."  The legal description

13   of the property is:

14                  PARCEL 1, IN THE CITY OF FULLERTON, COUNTY OF ORANGE,
                    STATE OF CALIFORNIA, AS SHOWN ON MAP FILED IN BOOK 60,
15                  PAGE 11 OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY
                    RECORDER OF SAID COUNTY.
16
                    EXCEPT THEREFROM ALL OIL, GAS, MINERALS, AND OTHER
17                  HYDROCARBON SUBSTANCES LYING BELOW THE SURFACE OF
                    SAID LAND, BUT WITH NO RIGHT OF SURFACE ENTRY, AS
18                  PROVIDED IN DEED RECORDED NOVEMBER 28, 1961 IN BOOK
                    5925 PAGE 272, OFFICIAL RECORDS.
19

20       13.    In early 2003, MENOUFI and HAISMAN, made plans to buy THE

21   HOTEL, and bought the hotel in April, 2003.  The purchase of the hotel was funded

22   by cash generated from the sales of MENOUFI's other properties.  NEMRAC

23   assumed an existing loan and the seller carried back the balance on a second deed of

24   trust.  Plaintiffs spent several millions of dollars renovating THE HOTEL and joining

25   the Wyndham Franchise before approaching WSB for refinancing.

26       14.    MENOUFI owned a great deal of art and antique furniture which he had

27   loaned it to THE HOTEL.  The agreement evidencing the loan of art and furniture is

28   dated May 28, 2003.  (Exhibit A)

                                          4

1    15.    By the time Plaintiffs were done, THE HOTEL, which had been
2  suffering before Plaintiffs bought it, was a going concern with substantially increased
3  revenues.  The Wyndham granted the Franchise to Plaintiffs on the condition of
4  completing certain renovations over the course of the next few years, which would
5  require spending another approximately Five Million dollars ($5,000,000).  Plaintiffs
6  obtained an appraisal of THE HOTEL listing its value in February 2007 at Twenty-six
7  million dollars ($26,000,000) after the initial renovations were done.  (Exhibit B)

8    16.    Based on that appraisal, Plaintiffs sought to refinance the first trust deed
9  for Eighteen Million Dollars through WSB.  WSB agreed to loan plaintiffs the
10 $18,000,000, but substantially lowered the amount on the date of signing to the
11 principal amount of Thirteen Million Three Hundred Thousand dollars ($13,300,000),
12 stating that an additional Five Million dollars would be available if needed.  Due to
13 the eminent maturity of the underlying loan, plaintiffs were compelled to accept the
14 lower loan amount and WSB funded the loan on September 6, 2007.  The loan
15 documents list NEMRAC as the borrower, and the Grantor as ADM.  The signatures
16 of HAISMAN for ADM and EL MENOUFI for NEMRAC are present on the loan
17 documents.  (Exhibit C)

18   17.    As a condition of the loan from WSB, NEMRAC's purchase of THE
19 HOTEL required them to keep the Franchise Agreement with Wyndham Hotels in
20 good standing.  (Covenants and Conditions, Exhibit D)

21   18.    As a further condition of the loan from WSB, NEMRAC was precluded
22 from obtaining secondary financing from any other source, should it be needed.
23 Rather, WSB continued to assure plaintiffs at the time of making the loan that up to
24 Eighteen Million dollars ($18,000,000) would be available to plaintiffs, should they
25 need to refinance.  Due to good management and the improvements in the condition of
26 THE HOTEL, revenues of THE HOTEL increased, and in April, 2008, THE HOTEL
27 was appraised at Thirty three Million dollars ($33,000,000).  (Exhibit E)

28

1     19.    Beginning in or about October, 2008, plaintiffs began attempts to meet

2   with WSB to refinance THE HOTEL for the Eighteen Million dollars ($18,000,000).

3   WSB had promised to be available should they need it.  Plaintiffs wanted to meet with

4   WSB to refinance the loan in order to roll in an amount necessary to make

5   improvements on THE HOTEL required by the Franchise Agreement.  Plaintiffs

6   needed the greater loan amount to make sure they had enough in reserve for payroll

7   and accounts payable during reconstruction and while the economy recovered from a

8   slowdown in travel partly due to the recession and partly due to the swine flu

9   epidemic.  Wyndham was putting pressure on THE HOTEL to complete the

10  renovations and Plaintiffs were beginning to have severe cash flow problems.

11  Wyndham pulled the franchise in November 2008, severely affecting Plaintiffs'

12  business.

13    20.    Plaintiffs continued throughout 2008 and early 2009 in their attempts to

14  obtain refinancing from WSB.  WSB failed and refused to refinance and/or restructure

15  the loan.

16    21.    Instead, in or about April, 2009, WSB met with plaintiffs and

17  recommended to plaintiffs that they sell THE HOTEL.  Plaintiffs were loath to sell

18  THE HOTEL – it is a unique, irreplaceable property that plaintiffs had worked hard to

19  develop, especially in grooming the franchise and creating business at THE HOTEL

20  before they took out the loan from WSB.  WSB failed and refused to cooperate with

21  plaintiffs in refinancing the loan.  Plaintiffs reluctantly accepted that WSB was

22  determined to sell THE HOTEL and believed cooperation with defendants was the

23  best path to follow, given the unavailability of hotel financing and the fact that WSB

24  refused to cooperate in refinancing the loan.

25    22.    Plaintiffs received a call from real estate agent YOUNG SOON JUHN of

26  TOP REALTY, who informed them she represented investors interested in purchasing

27  THE HOTEL.  YOUNG SOON JUHN requested a listing agreement and Plaintiffs

28  cooperated with her by providing all of the necessary confidential financial and

1   organizational documentation of THE HOTEL to YOUNG SOON JUHN.  YOUNG

2   SOON JUHN introduced Plaintiffs to STEVE SHIN of REMAX REALTY, whom she

3   stated was the agent representing buyer CATHERINE KYUNG KIM.

4          23.    In or about April, 2009, Defendants WSB, YOUNG SOON JUHN and

5   STEVE SHIN introduced plaintiffs to CATHERINE KYUNG KIM.  WSB indicated

6   that they emphatically wanted CATHERINE KYUNG KIM to have the hotel and

7   plaintiffs should accept her offer over any others, even if other offers were higher.

8   Plaintiffs understood this to mean that WSB had a special relationship with

9   CATHERINE KYUNG KIM whereby they favored her and that they might stand in

10  the way of sale to another entity.  Even though plaintiffs did not want to sell THE

11  HOTEL, they were under duress and they felt compelled to cooperate with WSB

12  because they had everything at stake in this property and plaintiffs feared THE

13  HOTEL would be unable to continue operating under the current financial situation.

14  Plaintiffs felt that as long as the sale went through, and the loan was paid off THE

15  HOTEL would be able to continue operations.  Plaintiffs understood that the sale

16  would have to be effectuated quickly however, in order to reinstate the Wyndham

17  Franchise and increase the value of THE HOTEL so that all the work plaintiffs had

18  contributed over the years would not be lost.  Unfortunately, defendants delayed the

19  sale, and THE HOTEL continued to lose value.

20         24.    In reliance on WSB's assurance that Mrs. Kim was buying the property

21  and WSB would be financing her loan, in May, 2009, plaintiffs stopped making their

22  loan payments.  Based on plaintiffs' understanding that the buyer was already

23  approved by the bank and was ready to make an offer WSB would accept, plaintiffs

24  anticipated that the sale of the property would be consummated reasonably quickly.

25  Plaintiffs did not anticipate WSB beginning foreclosure proceedings, especially since

26  their buyer was already approved and poised to make a great deal on THE HOTEL.

27         25.    On July 27, 2009, CATHERINE KYUNG KIM's company

28  GOLDENPARK, made an offer on THE HOTEL for Seventeen Million dollars

($17,000,000), far below the appraisal value plaintiffs had obtained.  GOLDENPARK made a deposit into Vision Escrow in the amount of $200,000.  The check was drawn on the account of SLEEPLAND, a corporation owned by CATHERINE KYUNG KIM.

26.     On September 10, 2009, BESTLAND was created as a limited liability company in California.  Its principle officer is listed as CATHERINE KYUNG KIM.

27.     On September 16, 2009, WSB sold plaintiffs' loan to BESTLAND.

28.     On September 16, 2009, the same day BESTLAND purportedly bought the note, BESTLAND issued a Notice of Default and Election to Sell under Deed of Trust.  Said Notice of Default was in violation of California <u>Civil Code</u> section 2923.5(a), which mandates that a mortgagee may not file a notice of default until thirty days after initial contact with the borrower is made.  Since BESTLAND did not even exist until September 10, 2009, and did not own the note until September 16, 2009, it is clear that BESTLAND did not give proper notice of default.  The illegal Notice of Default was recorded on October 2, 2009 and mailed to plaintiff NEMRAC on October 5, 2009.  No Notice of Default was sent to grantors ADM or to EL MENOUFI individually.  The signature on the Notice of Default is that of CATHERINE KYUNG KIM.

29.     On December 29, 2009, a Notice of Trustee's Sale was issued on THE HOTEL; the trustee's sale was scheduled for February 2, 2010.  The Declaration of Compliance on that Notice is faulty in that it does not state whether the order of exemption has or has not been obtained.  The Notice of Default and Notice of Trustee's Sale are further defective in that two of the parties to the Note were never served.

30.     On information and belief, in all of the wrongful acts alleged in this complaint, the Defendants and each of them have utilized the United States mail in furtherance of their pattern of conduct to unlawfully collect on negotiable instruments when they were not entitled under the law to do so, and, assuming *arguendo* that they

1 | did have the right to proceed to foreclosure under the note, to profit from those actions
2 | in amounts greater than their rights under the note to do so.

3 | 31. Defendants and each of them, in committing the acts alleged in this case
4 | are engaging in a pattern of unlawful activity.

5 | 32. As a result thereof, Plaintiff has been damaged in having to hire attorneys
6 | before bringing this action, and has had to and will have to incur attorney fees to stop
7 | the wrongful acts of the Defendants and each of them. Plaintiff has been damaged in
8 | other ways that are not readily apparent at this time, but will amend this Complaint to
9 | allege further damages as they are determined.

10 | 33. In pursuing non-judicial foreclosure, Defendants and each of them failed
11 | to provide proper notice of default to Plaintiffs.

12 | 34. On information and belief and, all Defendants shared in the illegal
13 | proceeds of the transaction; conspired with each other to defraud the Plaintiffs out of
14 | the proceeds of the loan and THE HOTEL; acted in concert to wrongfully deprive the
15 | Plaintiffs of their property and business; acted in concert and conspiracy to essentially
16 | steal the Plaintiffs' property and business and/or convert the Plaintiffs' property
17 | without providing Plaintiffs reasonably equivalent value in exchange; and conducted
18 | an illegal enterprise within the meaning of the RICO statute.

19 | 35. On information and belief, the Defendants have engaged in two or more
20 | instances of racketeering activity involving different victims but utilizing the same
21 | method, means, mode, operation, and enterprise with the same intended result.

22 | 36. On information and belief, Defendants caused a non-judicial foreclosure
23 | of Plaintiffs' property initiated on September 16, 2009.

24 | 37. On information and belief, Defendants lacked standing to cause a non
25 | judicial foreclosure on Plaintiff's property and original promissory note to take place
26 | because at the time Defendants initiated the foreclosure proceedings against Plaintiff,
27 | Defendants were not the holder in due course of Plaintiff's original promissory note

28 |

9

1  with regard to the subject property and because Defendants failed to provide proper
2  notice of default to Plaintiffs.

3      38.    Said foreclosure was an illegal, fraudulent or willfully oppressive under a
4  power of sale contained in a mortgage or deed of trust. Upon conducting discovery the
5  reasons will be set forth with more particularity.

7                    **FIRST CAUSE OF ACTION**
8            **FOR VIOLATION OF 18 USC § 1962(b), (c) AND (d)**
9                      (Against all Defendants)

10     39.    Plaintiffs refer to and reincorporate by reference each and every
11  allegation contained in the preceding paragraphs as though fully set forth hereat.

12     40.    The conspiracy the subject of this action has existed from the date
13  Plaintiffs were forced by the conspiracy of defendants into selling THE HOTEL and
14  stopped making payments on the mortgage to the present, with the injuries and
15  damages resulting therefrom continuing.

16     41.    Defendants' actions and use of multiple corporate entities, multiple
17  parties, and concerted predetermined acts and conduct specially designed to defraud
18  Plaintiffs constitutes an "enterprise," with the aim and objective of the enterprise
19  being to perpetrate a fraud upon the Plaintiffs through the use of intentional
20  nondisclosure, material misrepresentation, and the failure to give proper notice of
21  default.

22     42.    Each of the Defendants is an "enterprise Defendant." As a direct and
23  proximate result of the actions of the Defendants, Plaintiff has and continues to suffer
24  damages.

25  ///
26  ///
27  ///
28  ///

## SECOND CAUSE OF ACTION
## FOR VIOLATION OF 18 U.S.C. § 1344(2)

(Against all Defendants)

43.     Plaintiffs refer to and reincorporate by reference each and every allegation contained in paragraphs 1 through 42 hereof as though fully set forth hereat.

44.     The conspiracy the subject of this action has existed from the date Plaintiffs were forced by the conspiracy of defendants into selling THE HOTEL and stopped making payments on the mortgage to the present, with the injuries and damages resulting therefrom continuing.

45.     Defendant WSB's actions in selling Plaintiffs' note to other defendants effectively granted property in the control of the financial institution (WSB) by means of false and fraudulent pretenses into the hands of one or more of the other Defendants through the use of intentional nondisclosure, material misrepresentation, illegal transfer, and the failure to give proper notice of default.  Said acts were and conduct were specifically designed to defraud Plaintiffs and obtain Plaintiffs' property which was in the control of WSB, a financial institution.

46.     As a direct and proximate result of the actions of the Defendants, Plaintiff has and continues to suffer damages.

## THIRD CAUSE OF ACTION
## FOR WRONGFUL FORECLOSURE

(Against Defendants BESTLAND, WSB and CATHERINE KYUNG KIM)

47.     Plaintiffs refer to and reincorporate by reference each and every allegation contained in paragraphs 1 through 29 hereof as though fully set forth hereat.

48.     As alleged above, plaintiffs took out a loan from Defendant WSB to finance their purchase of THE HOTEL on September 6, 2007.  One requirement of the loan was that plaintiffs keep their Wyndham Franchise intact.  Another was that plaintiffs obtain no secondary financing through another source.  Plaintiffs were therefore locked into refinancing their loan through WSB when additional funds were

1   needed. WSB failed and refused to communicate with plaintiffs when they required
2   additional funding and refinancing of their loan, and as a result, plaintiffs lost the
3   Wyndham franchise, which not only diminished the value of the property, but locked
4   plaintiffs out of the Wyndham reservations and advertising system, which further
5   diminished plaintiffs' earnings.

6       49.   Plaintiffs had spent many years developing THE HOTEL and the
7   Wyndham franchise before purchasing THE HOTEL property. The loss of the
8   Wyndham franchise was extremely damaging to the value of THE HOTEL and the
9   work plaintiffs had done. Defendants convinced plaintiffs that selling THE HOTEL
10  was the only way to recoup their losses, and they introduced plaintiffs to
11  CATHERINE KYUNG KIM, whom WSB favored to buy THE HOTEL. Plaintiffs
12  felt they had no recourse but to cooperate with the sale of THE HOTEL to
13  CATHERINE KYUNG KIM and they did so cooperate.

14      50.   Defendants, however, mislead plaintiffs into cooperating with a sale that
15  they never intended to consummate. Instead, defendants stalled and dragged out the
16  sale process until such time as plaintiffs were in default on the loan, and then they sold
17  the loan to CATHERINE KYUNG KIM, through BESTLAND, an alter ego of
18  CATHERINE KYUNG KIM created for the sole purpose of foreclosing on the loan.

19      51.   BESTLAND bought the loan from WSB on September 16 and began
20  foreclosure proceedings the same day, in clear violation of California Civil Code
21  section 2923.5(a), whereby BESTLAND would have been required to initiate contact
22  with the borrower (plaintiffs) and wait thirty (30) days before initiating foreclosure
23  proceedings.

24      52.   The Promissory note and the Deed of Trust each contain an attorney fees
25  provision. Plaintiffs are thus entitled to an award of attorney fees from Defendants
26  WSB, BESTLAND, and CATHERINE KYUNG KIM, and each of them, jointly and
27  severally, for having to seek the relief requested herein.

28

**FOURTH CAUSE OF ACTION**

**FOR INJUNCTION AGAINST FORECLOSURE**

(Against Defendants BESTLAND, WSB, CATHERINE KYUNG KIM)

53.     Plaintiffs refer to and reincorporate by reference each and every allegation contained in paragraphs 1 through 30 hereof as though fully set forth hereat

54.     On or about October 2, 2009, defendants BESTLAND, CATHERINE KYUNG KIM and/or WSB caused a Notice of Default to be recorded stating that $577,117.63was required to pay off the Promissory Note secured by the Deed of Trust.  A copy of the Notice of Default is attached hereto as Exhibit "A."

55.     The Notice of Default was improperly issued by BESTLAND, an alter ego of CATHERINE KYUNG KIM, the owner of GOLDENPARK, the entity with whom plaintiffs had been negotiating the sale of the HOTEL and on whom plaintiffs relied to complete the sale and pay off the loan.

56.     Defendants WSB, BESTLAND, CATHERINE KYUNG KIM and each of them, are threatening to, and unless restrained, will sell THE HOTEL or cause it to be sold under a power of sale in the Deed of Trust. Should this foreclosure sale occur, plaintiffs will suffer great and irreparable injury, for which pecuniary compensation will not afford adequate relief.

57.     The Promissory note and the Deed of Trust each contain an attorney fees provision. Plaintiffs are thus entitled to an award of attorney fees from Defendants WSB, BESTLAND, TOP REALTY, REMAX REALTY, and each of them, jointly and severally, for having to seek the relief requested herein.

**FIFTH CAUSE OF ACTION**

**FOR COLLUSION**

**(Against all Defendants)**

58.     Plaintiffs refer to and reincorporate by reference each and every allegation contained in paragraphs 1 through 57 hereof as though fully set forth hereat.

59.     Plaintiffs are informed and believe, and based thereon allege, that once plaintiffs had submitted to defendant WSB that they needed to refinance THE HOTEL in October, 2008, defendants, jointly and severally, colluded and conspired to talk plaintiffs into listing THE HOTEL for sale. Defendants represented to plaintiffs that such sale, at a reasonable market value, would pay off the loan and any future arrearages, as well as providing plaintiffs some potentially substantial profit. Plaintiffs relied on WSB to protect their interests.

60.     In or about April, 2009, plaintiffs listed THE HOTEL for sale with the real estate agents recommended by WSB. AGENTS introduced CATHERINE KYUNG KIM to plaintiffs as a potential buyer. Once the AGENTS got involved in the process, plaintiffs stopped making the loan payments, again relying on WSB's assurance that they were selling THE HOTEL to CATHERINE KYUNG KIM and proceeds from the sale would pay off the loan.

61.     CATHERINE KYUNG KIM took some time to inspect THE HOTEL and finally made an offer on July 27, 2009 through her company, GOLDENPARK. GOLDENPARK offered Seventeen Million Dollars ($17,000,000), and made a $200,000 deposit into Vision Escrow. Plaintiffs received two subsequent "backup" offers on August 4, 2009 from MRYM and on September 16, 2009 from Phipps and Sons, Inc. Plaintiffs were prepared to complete the sale with GOLDENPARK, but GOLDENPARK stalled by negotiating minute details of the sale. It is clear that CATHERINE KYUNG KIM, the owner of GOLDENPARK, wanted a better deal than the one she had negotiated with plaintiffs.

62.     Defendants, and each of them, knew the financial situation of plaintiffs and using that knowledge, conspired and colluded to take advantage of plaintiffs to their own benefit and to the detriment of plaintiffs. In or about April, 2009, defendants JOANNE KIM and CATHERINE KYUNG KIM met with plaintiffs at WSB. JOANNE KIM informed plaintiffs that WSB wanted CATHERINE KYUNG KIM to own the property. WSB demanded that plaintiffs sign an indemnity

14

1  agreement and release of WSB. Plaintiffs were convinced that the bank so wanted

2  CATHERINE KYUNG KIM to have the property, that they would somehow block

3  the sale to any other entity. Rather than fight with the bank about the deal, plaintiffs

4  agreed to work with the buyer they wanted, even though they had higher offers from

5  other parties. Defendants assured plaintiffs that the pending sale would cover the cost

6  of the loan and provide some profit to plaintiffs. Once plaintiffs were introduced to

7  CATHERINE KYUNG KIM in April, 2009, they stopped making their loan

8  payments, as they worked out the arrangements of the sale. Defendants, however,

9  never intended to proceed with the sales process that was begun in April, 2009.

10      63.    CATHERINE KYUNG KIM, through GOLDENPARK, dragged out the

11  negotiations on the sale for over five months. By that time, plaintiffs were in default.

12  Once the loan was in default, defendants conspired to circumvent the sale of THE

13  HOTEL. On September 10, 2009, CATHERINE KYUNG KIM formed Bestland,

14  LLC to disguise, albeit thinly, what she was doing. On September 16, 2009, WSB

15  sold the loan to BESTLAND, who immediately and in contravention of the law, sent a

16  Notice of Default to plaintiffs. Plaintiffs believed that WSB had a legal responsibility

17  to protect plaintiffs' interest and did not know at that time that BESTLAND was an

18  alter ego of CATHERINE KYUNG KIM. The effect of defendants' collusion was to

19  transfer THE HOTEL to CATHERINE KYUNG KIM at far below the market price

20  and swindle plaintiffs out of any profits they would have received from the sale of the

21  property.

22      64.    Defendants, and each of them, colluded and conspired that once the loan

23  had been sold to CATHERINE KYUNG KIM through her newly created company, a

24  Notice of Default would be served on plaintiffs, along with a notice that the interest

25  rate on the note would be increased by five percent (5%) to twelve point seven-five

26  percent (12.75%), as per the original loan agreement with WSB.

27

28

15

1    65.    Plaintiff is informed and believes that WSB sold the note to BESTLAND
2  and also financed BESTLAND's purchase of the note, in contravention of legal
3  banking practices.

4    66.    The conduct of defendants in colluding to swindle plaintiffs first out of
5  ownership of THE HOTEL and then out of the proceeds of a proper sale is illegal and
6  outrageous.  If defendants succeed in their collusive attempt to wrest the HOTEL
7  property from plaintiffs, plaintiffs will be damaged irreparably.

8    67.    The above acts and omissions of defendants are fraudulent and deceptive,
9  malicious and oppressive, and constitute despicable conduct within the meaning of
10  Section 3294 of the California <u>Civil Code</u>, and plaintiffs are entitled to exemplary
11  damages in such sum as will appropriately deter such conduct in the future, to be fixed
12  by the trier of fact.

13

14                          **SIXTH CAUSE OF ACTION**
15                      **FOR FRAUD IN THE INDUCEMENT**
16      **(Against Defendants WSB, JOANNE KIM, GOLDENPARK, and CATHERINE**
17                              **KYUNG KIM)**

18    68.    Plaintiffs refer to and reincorporate by reference each and every
19  allegation contained in paragraphs 1 through 67 hereof as though fully set forth hereat.

20    69.    Plaintiffs allege that the acts and omissions of defendants WSB,
21  JOANNE KIM, GOLDENPARK and CATHERINE KYUNG KIM were fraudulent
22  and calculated to lead plaintiffs to default on their loan by inducing them to rely on
23  defendants' words and actions, which were calculated to lead plaintiffs to believe that
24  defendants, and each of them, actually intended to transact the sale of THE HOTEL,
25  which sale would benefit plaintiffs by paying off the loan and allowing them to recoup
26  the equity plaintiff owned in THE HOTEL.  In reality, defendants never intended to
27  complete the sale and intended instead to induce plaintiffs into defaulting on the loan

28

1 | so that defendants could foreclose and sell the THE HOTEL to CATHERINE
2 | KYUNG KIM for an amount far below market value.

3 |   70. The fraudulent acts and omissions of defendants have damaged plaintiffs
4 | in an amount according to proof at time of trial.

5 |   71. The above acts and omissions of defendants are fraudulent and deceptive,
6 | malicious and oppressive, and constitute despicable conduct within the meaning of
7 | Section 3294 of the California <u>Civil Code</u>, and plaintiffs are entitled to exemplary
8 | damages in such sum as will appropriately deter such conduct in the future, to be fixed
9 | by the trier of fact.

10 |

11 | <div align="center">**SEVENTH CAUSE OF ACTION**</div>
12 | <div align="center">**FOR BREACH OF THE COVENANT OF**</div>
13 | <div align="center">**GOOD FAITH AND FAIR DEALING**</div>
14 | <div align="center">**(Against All Defendants)**</div>

15 |   72. Plaintiffs refer to and reincorporate by reference each and every
16 | allegation contained in paragraphs 1 through 71 hereof as though fully set forth hereat.

17 |   73. The original loan entered into on September 6, 2007 included a clause
18 | that prohibited plaintiffs from obtaining secondary financing, which required plaintiffs
19 | to come to WSB for further funding if it were needed.

20 |   74. At the time the original loan was issued, WSB had appraised THE
21 | HOTEL at Thirty Million dollars ($30,000,000). Based on that appraisal, WSB stated
22 | that it would fund up to Eighteen Million dollars.

23 |   75. On or about October 15, 2008, NEMRAC met with defendants YUN and
24 | CHO at WSB to request refinancing the existing loan on THE HOTEL to include
25 | paying off the original loan and to roll in additional money needed to make
26 | improvements on THE HOTEL required by "THE FRANCHISE." NEMRAC
27 | provided to WSB an appraisal report valuing THE HOTEL at Thirty-three million

28 |

<div align="center">17</div>

1 | dollars ($33,000,000).  WSB had lead plaintiffs to believe they would loan up to
2 | Eighteen Million dollars ($18,000,000) to plaintiffs.

3 |      76.    In or about October, 2008, WSB provided an appraisal report that valued
4 | THE HOTEL at approximately Nineteen Million Dollars ($19,000,000), when in fact
5 | the actual value of THE HOTEL was far more than that.   Plaintiffs' appraiser had
6 | valued THE HOTEL at over Thirty-three Million dollars ($33,000,000).

7 |      77.    Plaintiffs allege that WSB provided the low appraisal in October 2008 in
8 | a bad faith attempt to force Plaintiffs to sell THE HOTEL to a buyer WSB had
9 | selected and for whom WSB planned to provide financing.

10 |      78.    When WSB failed to communicate with plaintiffs throughout 2008, and
11 | failed and refused to refinance the loan as they had suggested they would, plaintiffs
12 | attempted to obtain secondary financing through other sources.  Plaintiffs were unable
13 | to obtain secondary financing due to the clause in the contract they had entered into
14 | with WSB.  Plaintiffs requested that WSB renegotiate the loan to remove only that
15 | clause, but WSB failed and refused to do so.

16 |      79.    Defendants' failure to renegotiate and/or refinance the loan with plaintiffs
17 | was part of a plan to move the hotel property into the hands of CATHERINE KYUNG
18 | KIM and cheat plaintiff out of the proceeds of any sale over and above the loan
19 | amount.

20 |      80.    Defendants' failure to renegotiate and/or refinance the loan with plaintiffs
21 | caused plaintiffs to lose the franchise with Wyndham, which loss reduced the sale
22 | value of THE HOTEL.

23 |      81.    The conduct of defendants in their breach of the covenant of good faith
24 | and fair dealing has damaged plaintiffs in an amount to be determined at trial, but at
25 | least four million dollars ($4,000,000).

26 | ///
27 | ///
28 | ///

## EIGHTH CAUSE OF ACTION
## FOR BREACH OF FIDUCIARY DUTY
### (Against All Defendants)

82.     Plaintiffs refer to and reincorporate here by reference each allegation contained in paragraphs 1 through 81 hereof as though fully set forth.

83.     By virtue of the contract entered into between defendant WSB and plaintiffs, wherein WSB agreed to provide funding to plaintiffs to own and operate THE HOTEL, to keep the franchise current and to provide refinancing as needed, and precluding plaintiffs from obtaining secondary funding from any other source, defendants assumed a fiduciary duty to plaintiffs, in that they agreed to act for the benefit of plaintiffs in financing the ownership and operation of THE HOTEL in a manner reasonably calculated to benefit the plaintiffs.

84.     By virtue of the real estate sales contracts entered into among Plaintiffs and other defendants, Defendants GOLDENPARK, LLC, CATHERINE KYUNG KIM, YOUNG SOON JUHN, TAESUNG JUHN dba TOP REALTY, STEVE SHIN, REMAX REALTY and other Defendants to be named as provided by further discovery, assumed a fiduciary duty to plaintiffs by agreeing to act for the benefit of plaintiffs in selling THE HOTEL, which by law should reasonably have been calculated to benefit the plaintiffs.

85.     Sometime on or after October, 2008, defendant WSB failed and refused to cooperate or communicate with plaintiffs in spite of plaintiffs' repeated attempts to communicate the dire nature of the financial situation imposed by defendants' failure to refinance the loan or rework the loan to take out the clause barring plaintiffs from obtaining secondary financing from another source.

86.     Defendants deliberately or negligently failed to cooperate and communicate with Plaintiffs who relied on the defendants to help them in their ownership and operation of THE HOTEL and the Franchise.

87.     Defendants and each of them, in contravention of their duty to plaintiffs, conspired to sell THE HOTEL to CATHERINE KYUNG KIM at below market value through BESTLAND, which assumed the fiduciary duty to plaintiffs when it bought the loan from WSB.

88.     As a result of such breaches of fiduciary duty, plaintiffs were damaged in an amount not yet fully ascertained but which is at least Thirty Million Dollars ($30,000,000), including lost equity, lost income and otherwise avoidable tax liabilities.

89.     The above acts and omissions of defendants are fraudulent and deceptive, malicious and oppressive, and constitute despicable conduct within the meaning of Section 3294 of the California Civil Code, and plaintiffs are entitled to exemplary damages in such sum as will appropriately deter such conduct in the future, to be fixed by the trier of fact.

## NINTH CAUSE OF ACTION
## FOR CONVERSION
### (Against All Defendants)

90.     Plaintiffs refer to and reincorporate by reference each and every allegation contained in paragraphs 1 through 92 hereof as though fully set forth hereat.

91.     The acts of defendants, and each of them in conspiring to swindle plaintiffs into a sale of THE HOTEL that they intended never to honor, were acts of interference with Plaintiff's property and/or the equity therein, done without lawful justification. Plaintiffs, the persons entitled to the property and the equity therein, has been deprived of its use and possession of said property and, therefore, the actions by defendants, and each of them, constitute an act of conversion.

92.     Plaintiffs allege that all defendants are liable for defendants' act of conversion.

///

///

### TENTH CAUSE OF ACTION

### FOR INTENTIONAL MISREPRESENTATION

#### (Against All Defendants)

93.     Plaintiffs refer to and reincorporate by reference each and every allegation contained in paragraphs 1 through 92 hereof as though fully set forth hereat.

94.     Defendant WSB intentionally mislead plaintiffs by promising to fund up to Eighteen Million Dollars ($18,000,000) on a renegotiable promissory note and thereafter failed and refused to renegotiate the loan.

95.     Defendant WSB intentionally provided a false appraisal report of THE HOTEL which was at least Fourteen Million Dollars ($14,000,000) lower than the appraisal report plaintiffs had obtained in order to renege on WSB's promise to fund a higher loan amount.

96.     Defendants, and each of them, willingly and maliciously mislead plaintiffs into negotiating to sell THE HOTEL and reassuring plaintiffs that defendants would cooperate in plaintiffs' negotiations to sell THE HOTEL. Defendants, and each of them, had no intention of following through with the sales negotiations, and instead planned to protract negotiations until such time as the note was far enough in default to issue a notice of default and begin foreclosure proceedings.

97.     The intentional misrepresentations of Defendants, and each of them, that the sale of THE HOTEL was intended to pay off the loan and provide some profit to plaintiffs, caused plaintiffs to default on the loan.

98.     Plaintiffs have been damaged by the intentional misrepresentations of defendants in an amount of at least Thirty Million Dollars ($30,000,000), to be determined at trial.

WHEREFORE, plaintiff prays judgment against defendants, and each of them, as follows:

///

1

**ON THE FIRST CAUSE OF ACTION**

2       1.    For civil and criminal penalties against Defendants, and each of them,

3              according to proof at time of trial.

4

**ON THE SECOND CAUSE OF ACTION**

5       2.    For civil and criminal penalties against Defendants, and each of them ,

6              according to proof at time of trial.

7

**ON THE THIRD CAUSE OF ACTION**

8       3.    For an order requiring Defendants WSB, BESTLAND, CATHERINE

9              KYUNG KIM and DOES 1-10, inclusive, to show cause why said

10             defendants should not be enjoined, as set forth below, during the

11             pendency of this action.

12      4.    For a temporary restraining order, a preliminary injunction and a

13             permanent injunction, enjoining Defendants WSB, BESTLAND,

14             CATHERINE KYUNG KIM and DOES 1-10, inclusive, and all persons

15             acting under them, from selling THE HOTEL or attempting to sell THE

16             HOTEL or causing THE HOTEL to be sold under the power of sale in

17             that certain Deed of Trust, recorded against THE HOTEL, on September

18             14, 2007, as instrument number 07-562494.

19

**ON THE FOURTH CAUSE OF ACTION**

20      5.    For an order requiring Defendants WSB, BESTLAND, CATHERINE

21             KYUNG KIM and DOES 1-10, inclusive, to show cause why said

22             defendants should not be enjoined, as set forth below, during the

23             pendency of this action.

24      6.    For a temporary restraining order, a preliminary injunction and a

25             permanent injunction, enjoining Defendants WSB, BESTLAND,

26             CATHERINE KYUNG KIM and DOES 1-10, inclusive, and all persons

27             acting under them, from selling THE HOTEL or attempting to sell THE

28             HOTEL or causing THE HOTEL to be sold under the power of sale in

1    that certain Deed of Trust, recorded against THE HOTEL, on September

2    14, 2007, as instrument number 07-562494.

3                          **ON THE FIFTH CAUSE OF ACTION**

4    7.    For damages in an amount according to proof at the time of trial, alleged

5          to be in excess of Thirty Million Dollars ($30,000,000);

6    8.    For punitive damages according to statute;

7                          **ON THE SIXTH CAUSE OF ACTION**

8    9.    For damages in an amount according to proof at the time of trial, alleged

9          to be in excess of Thirty Million Dollars ($30,000,000);

10                        **ON THE SEVENTH CAUSE OF ACTION**

11   10.   For damages in an amount according to proof at the time of trial, alleged

12         to be in excess of Thirty Million Dollars ($30,000,000);

13                        **ON THE EIGHTH CAUSE OF ACTION**

14   11.   For damages in an amount according to proof at the time of trial, alleged

15         to be in excess of Thirty Million Dollars ($30,000,000);

16                        **ON THE NINTH CAUSE OF ACTION**

17   12.   For damages in an amount according to proof at the time of trial, alleged

18         to be in excess of Thirty Million Dollars ($30,000,000);

19                        **ON THE TENTH CAUSE OF ACTION**

20   13.   For damages in an amount according to proof at the time of trial, alleged

21         to be in excess of Thirty Million Dollars ($30,000,000);

22                        **ON ALL CAUSES OF ACTION**

23   1.    For costs of suit herein;

24   2.    For such other and further relief as this court may deem just and proper.

25

26   Dated: March 15, 2010                    Law Offices of Leslie Richards, P.C.

27

28                                            Leslie Richards, Attorney for Plaintiffs

                                    23

1

## VERIFICATION

2

3 STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

4      I have read the foregoing document described as VERIFIED COMPLAINT FOR

5 DAMAGES and its contents. I am a party to this action and am the managing member of NEMRAC

6 HOSPITALITY GROUP, also a party to this action. The matters stated in the foregoing document

7 are true of my own knowledge except as to those matters which are stated on information and belief,

8 and as to those matters, I believe them to be true.

9      I declare under penalty of perjury under the laws of the State of California that the foregoing

10 is true and correct and that this verification was executed on March 15, 2010 at Sherman Oaks,

11 California.

12

13                        FAHMI EL MENOUFI, Plaintiff, individually

14                        and on behalf of NEMRAC HOSPITALITY
                        GROUP

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## LOAN OF PERSONAL PROPERTIES AGREEMENT

This Agreement, entered into by and between Fred Menoufi, of legal age, with business address at 904 Silver Spur Rd, Rolling Hills, California 90274 and herein referred to as "LENDER", and Nemrac Hospitality Group LLC/American Diversified Management, Inc., dba: Wyndham Anaheim Park Hotel, herein represented by Tony Haisman, of legal age, with business address at 222 W. Houston Avenue, Fullerton, California 92838, and herein referred to as "CUSTODIAN", affirm, as they hereby AFFIRM, the following terms and conditions of this Agreement:

a. Lender will deliver, on or before June 1, 2003, to the above-named Custodian, various antique furniture and fixtures, arts and artifacts, which are described and listed in detail per EXHIBIT "A" attachment to this Agreement, at the above-named business address which is located at 222 W. Houston Avenue, Fullerton, California 92838;

b. It is understood that Custodian will be responsible for the safekeeping and required maintenance (and repair, if necessary) of said furniture and fixtures, arts and artifacts, as listed in EXHIBIT "A" attachment to this Agreement, at his OWN cost and expense; it is also understood that Custodian will ensure that adequate and comprehensive theft, fire and liability insurance coverage for these antique furniture and fixtures, arts and artifacts, are obtained and renewed currently until the expiration of this Agreement; it being understood further that the value of such insurance coverage will be based on the prevailing market value of such antique furniture and fixtures, arts and artifacts, as may be determined by the Lender named hereinabove, and/or by professional antique appraisers who are acceptable to the insuring parties;

c. This Agreement will have an initial duration of one (1) year, effective June 1, 2003 through May 31, 2004, and unless terminated earlier by either Party to this Agreement, same will be considered extended automatically from year-to-year; it being understood that this Agreement may be terminated at ANYTIME, for any reason whatsoever, by the Lender; it being understood further that an ORAL advice of such intention to terminate is all that is needed to effect the termination of this Agreement; and finally

d. It is also understood that Lender will not charge Custodian any rental or display fees for the use and/or display of these antique furniture and fixtures, arts and artifacts, EXCEPT for the cost and other expenses related to the maintenance and/or repair of same (if deemed necessary by the Lender); it being understood that such usage and/or display will only be permitted by Lender at Custodian's above-named business address on 222 W. Houston Avenue, Fullerton, California 92838.

The above-named Parties to this Agreement, confirm, as they hereby CONFIRM, their FULL UNDERSTANDING of the above-described terms and conditions of this Agreement by signing, in the presence of witnesses, their usual customary signatures in the section(s) provided for same.

S I G N E D:

_____
Fred Menoufi, in his Personal Capacity
Date: 5/28/03

_____
Tony Haisman, for: American Diversified Mgmt.
Inc., dba: Anaheim Park Hotel
Date: 5.28.03

W I T N E S S E D   B Y:

_____
Romeo F. Maniquez
Date: 5-28-03

_____
Bhagyesh Kharwa
Date: 5/28/03



WYNDHAM ANAHEIM PARK HOTEL

# ART AND ARTIFACTS

Measurements:
W= width
D= depth
H= height
L= length

Quantity

## 1. LOBBY

| Item | Quantity |
|---|---|
| a. Egyptian statue, black / gold | 2- 6' 1½" H; 4- 37½"H |
| b. Roman bust, marble, on stand | 2 |
| c. Roll top desk | 2 |
| d. Vase with boy & girl | 2 |
| e. Vase with ram heads | 2 |
| f. Coffee table with glass top | 1- 64" diameter; 2- 50" dia. |
| g. Statues of ancient Egyptian gods | 4- 3.5' H |
| h. Oval planter with floral pattern | 1- 7" H |
| i. Blue vase with gold ornamentation & floral pattern | 2- 2' H |
| j. Desk | 2- 69"W x 38"D x 33"H |
| k. Statue, boy holding covered urn, | 2- 24½"H |
| l. India-style wood horse | 2- 81½"H |
| m. Plant stand, inlaid wood / marble | 1- 4'5½"H |
| n. Mirror with silver frame | 1-105"x 90" |
| o. Sculpture, silver eagle | 1- 53½"H |
| p. "Urn" tapestry, on decorative rods | 2 |

Art and Artifacts List
Revised 11.28.07

1

| | |
|---|---|
| q. Sofa, with two matching chairs | 2 |
| r. Fountain, three tier | 1 |
| s. Chandelier | 1 large, 1 small |
| t. Table; wood base with angels, glass top | 1 |
| u. Oil painting; Egyptian head | 2 |
| v. Fountain, wall mounted ceramic tile (Front Desk) | 2 |

## 2. LOBBY CORRIDOR

| | |
|---|---|
| a. Sculpture; lady with flowers, lamp on top. On marble stand | 2 |
| b. Mirror, rectangular with gold frame | 2 |
| c. Table, gold with marble top | 1 |
| d. Sideboard with marble top | 1 |
| e. Vase, black/ gold | 1 |
| f. Painting | 2 acrylic, 1 print |
| g. Sculpture; boy holding lamp, black / gold. On marble stand | 2 |
| h. Sideboard, decorated | 2 |
| i. Decorative lamp | 2- 32½"H |
| j. Mirror, round with black/ gray wood frame | 2 |
| k. Birdcage with two parrots, 34"H. On 32½" wood & marble stand | 1 |
| l. Chandelier | 2 |
| m. Chandelier with lamp shades | 1 |
| n. Cabinet, decorated | 1- 32¾"H |
| o. Roman bust sculpture, marble | 1 |

Art and Artifacts List
Revised 11.28.07

| | |
|---|---|
| p. Readerboard, brass (one in Lobby) | 2 |
| q. Mirror with antique silver frame | 1 |

## 3. BANQUET ROOMS CORRIDOR

| | |
|---|---|
| a. Marble lamp with lion sculpture | 2 |
| b. Planter, black marble, on stand | 2- 5' 3"H |
| c. Planters, black marble | 10-5'H |
| d. Chairs, telephone | 6 |
| e. Side table/ cabinet with marble top | 1- 39½"H |
| f. Painting, six- panel architectural scene | 1 |
| g. Fountain, one tier with four ladies on base | 1 |
| h. Painting, | 3- 45" x 49" |
| i. Side table/ cabinet, 3'H | 2 |

## 4. RESTAURANT

| | |
|---|---|
| a. Fountain, wall mounted ceramic tile | 1 |
| b. Painting | 9 |
| c. Decorative column | 2 |
| d. Lion sculpture | 1- 27½"H |
| e. Painting, on wood | 2 |

## 5. LOUNGE

| | |
|---|---|
| a. Painting | 5 |
| b. Painting, watercolor on wood | 2- 4' 3"x 7' |

Art and Artifacts List
Revised 11.26.07

3

| c. Decorative screens | 4 |
|---|---|
| d. Sideboard/ cabinet, marble top | 1- 38"H |
| e. Buffet with marble top | 1- 38"H |
| f. Suit of armor | 1 |
| g. Coffee table with marble top | 1 |
| h. Chandelier | 1 |
| i. Planter stand, 19½"H | 1 |
| j. Faux elephant tusk | 2 |
| k. Elephant head | 1 |
| l. Decorative box | 2- 11"H; 1- 14½"H |

## 6. BOARDROOM

| a. Statue; "Angel Musician" with stand | 4- 42"H |
|---|---|
| b. Urn, jade green, on "fish" stand | 1- 15"H |
| c. Brass vase | 1- 8"H |
| d. Painting | 3 |
| e. Table | 1- 41"W x 22"D x 31"H |
| f. Dining Room table | 1- 11'8"W x 50½"D |
| g. Dining Room chair | 6 |
| h. Buffet | 1- 78 ¾"W x 19½"D |
| i. Mirrored bed headboard( as backdrop for buffet) | 1 |
| j. Credenza | 1- 44"W x 17½"D |
| k. Sideboard | 1- 4'W x 20"D x 37½"H |

## 7. BRIDAL SUITE (ROOM 168)

| a. Painting | 4 |
|---|---|

Art and Artifacts List
Revised 11.28.07

| | |
|---|---|
| b. Mirror with antique gold frame | 2 |
| c. Vase with deer heads | 1- 13"H |
| d. Vase with cherubs | 1- 10½"H |
| e. Side table | 1- 44"W x 20½"D |
| f. Desk lamp, marble and gold | 1 |
| g. Floor lamp, column style | 1 |
| h. Planter | 2- 15"H |
| i. Asian horse sculpture | 1-15"H |
| j. Coffee table | 1 |
| k. Rug | 2 |
| l. Hassock | 1 |
| m. Footstool | 2 |
| n. Settee | 1 |
| o. Bedside table | 2 |
| p. Armoire | 1 |
| q. Table lamp | 2 |
| r. Planter | 1- 11½"H |

## EXTERIOR

## 8. PATIO/ POOL AREA

| | |
|---|---|
| a. Urn, with two children | 2- 76"H |
| b. White marble urn, on stand | 2- 53½"H |
| c. Street lamp with sculpture | 2 |

Art and Artifacts List
Revised 11.28.07

5

d. "Seasons" statue                          5

e. Seating bench, stone                      1- 16'W

f. White pottery urn, on stand               1- 55"H

g. Urn with angels, silver                   2

h. Fountain, unassembled                     1


## 9. FRONT ENTRANCE

a. Lion fountain
                                             1

## 10. SOUTH AREA

a. Elephant statue                           2

b. Poseidon statue                           2

c. Fountain, two tier                        1

d. Plant stand                               2- 40"H

e. Architectural column (in crate)           8


## 11. NORTH AREA

a. Fountain, three tier                      1

b. "Angel" street lamps                      2

Art and Artifacts List
Revised 11.28.07

# NOTICE OF FINAL AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $13,300,000.00 | 09-06-2007 | 09-10-2012 | 918542 | 071* | | 1920 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** NEMRAC HOSPITALITY GROUP, LLC
222 W. HOUSTON AVE.
FULLERTON, CA 92832

**Lender:** Wilshire State Bank
Cerritos Office
3200 Wilshire Blvd
Los Angeles, CA 90010

BY SIGNING THIS DOCUMENT EACH PARTY REPRESENTS AND AGREES THAT: (A) THE WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES, (B) THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES, AND (C) THE WRITTEN LOAN AGREEMENT MAY NOT BE CONTRADICTED BY EVIDENCE OF ANY PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OR UNDERSTANDINGS OF THE PARTIES.

As used in this Notice, the following terms have the following meanings:

**Loan.** The term "Loan" means the following described loan: a Fixed Rate (7.650%) Nondisclosable Loan to a Limited Liability Company for $13,300,000.00 due on September 10, 2012.

**Loan Agreement.** The term "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, relating to the Loan, including without limitation the following:

## LOAN DOCUMENTS

Amortization Schedule
Corporate Resolution: AMERICAN DIVERSIFIED MANAGEMENT, INC.
Customer Information Profile: NEMRAC HOSPITALITY GROUP, LLC
CA Commercial Guaranty: AMERICAN DIVERSIFIED MANAGEMENT, INC.
CA Commercial Security Agreement: All inventory, equipment, accounts (including but not limited to all health-care-insurance receivables), chattel paper, instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, and general intangibles (including but not limited to all software and all payment intangibles); all oil, gas and other minerals before extraction; all oil, gas, other minerals and accounts constituting as-extracted collateral; all fixtures; all timber to be cut; all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all additions, replacements of and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property; all good will relating to the foregoing property; all records and data and embedded software relating to the foregoing property, and all equipment, inventory and software to utilize, create, maintain and process any such records and data on electronic media; and all supporting obligations relating to the foregoing property; all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property; and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing property.; owned by AMERICAN DIVERSIFIED MANAGEMENT, INC.
NV National UCC Financing Statement (Rev. 05/22/02): All inventory, equipment, accounts (including
Agreement to Provide Insurance: Real Property located at 222 W. HOUSTON AVE., FULLERTON, CA 92832; All inventory, equipment, accounts (including but not limited to all health-care-insurance receivables), chattel paper, instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, and general intangibles (including but not limited to all software and all payment intangibles); all oil, gas and other minerals before extraction; all oil, gas, other

Hazard Insurance Disclosure - CA
LLC Resolution: NEMRAC HOSPITALITY GROUP, LLC
Business Loan Agreement
Promissory Note
CA Commercial Guaranty: FAHMI ELMENOUFI
NV Commercial Security Agreement: All inventory, equipment, accounts (including but not limited to all health-care-insurance receivables), chattel paper, instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, and general intangibles (including but not limited to all software and all payment intangibles); all oil, gas and other minerals before extraction; all oil, gas, other minerals and accounts constituting as-extracted collateral; all fixtures; all timber to be cut; all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all additions, replacements of and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property; all good will relating to the foregoing property; all records and data and embedded software relating to the foregoing property, and all equipment, inventory and software to utilize, create, maintain and process any such records and data on electronic media; and all supporting obligations relating to the foregoing property; all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property; and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing property.; owned by NEMRAC HOSPITALITY GROUP, LLC
CA Deed of Trust for Real Property located at 222 W. HOUSTON AVE., FULLERTON, CA 92832
CA Hazardous Substances Agreement
CA National UCC Financing Statement (Rev. 05/22/02): All inventory, equipment, accounts (including

NOTICE OF FINAL AGREEMENT
(Continued)

accessories, fittings, increases, tools, parts, repairs, supplies,
and commingled goods relating to the foregoing property, and
all additions, replacements of and substitutions for all or any
part of the foregoing property; all insurance refunds relating to
the foregoing property; all good will relating to the foregoing
property; all records and data and embedded software relating
to the foregoing property, and all equipment, inventory and
software to utilize, create, maintain and process any such
records and data on electronic media; and all supporting
obligations relating to the foregoing property; all whether now
existing or hereafter arising, whether now owned or hereafter
acquired or whether now or hereafter subject to any rights in
the foregoing property; and all products and proceeds
(including but not limited to all insurance payments) of or
relating to the foregoing property.; owned by NEMRAC
HOSPITALITY GROUP, LLC
Agreement to Provide Insurance: All inventory, equipment,
accounts (including but not limited to all health-care-insurance
receivables), chattel paper, instruments (including but not
limited to all promissory notes), letter-of-credit rights, letters
of credit, documents, deposit accounts, investment property,
money, other rights to payment and performance, and general
intangibles (including but not limited to all software and all
payment intangibles); all oil, gas and other minerals before
extraction; all oil, gas, other minerals and accounts
constituting as-extracted collateral; all fixtures; all timber to be
cut; all attachments, accessions, accessories, fittings,
increases, tools, parts, repairs, supplies, and commingled
goods relating to the foregoing property, and all additions,
replacements of and substitutions for all or any part of the
foregoing property; all insurance refunds relating to the
foregoing property; all good will relating to the foregoing
property; all records and data and embedded software relating
to the foregoing property, and all equipment, inventory and
software to utilize, create, maintain and process any such
records and data on electronic media; and all supporting
obligations relating to the foregoing property; all whether now
existing or hereafter arising, whether now owned or hereafter
acquired or whether now or hereafter subject to any rights in
the foregoing property; and all products and proceeds
(including but not limited to all insurance payments) of or
relating to the foregoing property.; owned by AMERICAN
DIVERSIFIED MANAGEMENT, INC.
Authorization for Payoff: DNA SEMIANNUAL MORTGAGE
FUND III LP
Authorization for Payoff: NATIONAL BANK OF CALIFORNIA
Disbursement Request and Authorization
Notice of Final Agreement
Wilshire State Bank Privacy Policy: AMERICAN DIVERSIFIED
MANAGEMENT, INC.
Wilshire State Bank Privacy Policy: NEMRAC HOSPITALITY
GROUP, LLC
Wilshire State Bank Privacy Policy: FAHMI ELMENOUFI

Parties. The term "Parties" means Wilshire State Bank and any and all entities or individuals who are obligated to repay the loan or
have pledged property as security for the Loan, including without limitation the following:

Borrower:        NEMRAC HOSPITALITY GROUP, LLC
Grantor(s):      NEMRAC HOSPITALITY GROUP, LLC
Grantor(s):      AMERICAN DIVERSIFIED MANAGEMENT, INC.
Guarantor 1:     FAHMI ELMENOUFI
Guarantor 2:     AMERICAN DIVERSIFIED MANAGEMENT, INC.

## NOTICE OF FINAL AGREEMENT
### (Continued)

Each Party who signs below, other than Wilshire State Bank, acknowledges, represents, and warrants to Wilshire State Bank that it has received, read and understood this Notice of Final Agreement. This Notice is dated September 6, 2007.

BORROWER:

NEMRAC HOSPITALITY GROUP, LLC

By: _____
     FAHMI ELMENOUFI, Managing Member of NEMRAC
     HOSPITALITY GROUP, LLC

GRANTOR:

AMERICAN DIVERSIFIED MANAGEMENT, INC.

By: _____
     ANTHONY M. HAISMAN, President & Secretary of
     AMERICAN DIVERSIFIED MANAGEMENT, INC.

GUARANTOR:

X _____
     FAHMI ELMENOUFI, Individually

GUARANTOR:

AMERICAN DIVERSIFIED MANAGEMENT, INC.

By: _____
     ANTHONY M. HAISMAN, President & Secretary of
     AMERICAN DIVERSIFIED MANAGEMENT, INC.

LENDER:

WILSHIRE STATE BANK

X _____
   Authorized Signer

## LOAN COVENANTS AND CONDITIONS

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $13,300,000.00 | 09-06-2007 | 09-10-2012 | 918542 | 071* | | 1920 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

Borrower: NEMRAC HOSPITALITY GROUP, LLC
222 W. HOUSTON AVE.
FULLERTON, CA 92832

Lender: Wilshire State Bank
Cerritos Office
3200 Wilshire Blvd
Los Angeles, CA 90010

This LOAN COVENANTS AND CONDITIONS is attached to and by this reference is made a part of the Business Loan Agreement, dated September 6, 2007, and executed in connection with a loan or other financial accommodations between WILSHIRE STATE BANK and NEMRAC HOSPITALITY GROUP, LLC.

1. BORROWER SHALL PROVIDE ANNUAL BORROWER AND GUARANTORS TAX RETURN, INCLUDING ALL SCHEDULES AND K-1S, TO BE SUBMITTED WITHIN 30 DAYS OF FILING, OR IN THE CASE OF EXTENSION (COPIES ALSO TO BE PROVIDED), NO LATER THAN 6 MONTHS AFTER FIRST FILING DUE DATE.

2. ANNUAL BORROWER CPA COMPILED FINANCIAL STATEMENTS TO BE SUBMITTED WITHIN 90 DAYS OF FISCAL YEAR END WITHIN MONTH ADR AND OCCUPANCY RATE.

3. SEMI-ANNUAL COMPANY-PREPARED FINANCIAL STATEMENT WITH ADR & OCCUPANCY RATE DUE NO LATER THAN 45 DAYS AFTER EACH SEMI-ANNUAL PERIOD END.

4. ANNUAL GUARANTOR'S PERSONAL FEDERAL TAX RETURN, INCLUDING ALL SCHEDULES, TO BE SUBMITTED WITHIN 30 DAYS OF FILING, OR IN THE CASE OF EXTENSION (COPIES ALSO TO BE PROVIDED), NO LATER THAN 6 MONTHS AFTER FIRST FILING DUE DATE.

5. PRIOR TO FUNDING, OBTAIN CERTIFICATE OF GOOD STANDING WITH WYNDHAM FRANCHISE.

6. BORROWER SHOULD MAINTAIN WYNDHAM HOTEL FRANCHISE, AND PRIOR WRITTEN APPROVAL IS REQUIRED IF THERE IF ANY CHANGE WITH FRANCHISOR.

7. MAINTAIN PROPERTY TAXES AND OTHER ASSESSMENTS CURRENT.

8. MAINTAIN MINIMUM PROPERTY DEBT SERVICE COVERAGE RATIO (DSCR) OF 1.0X. DCR IS DEFINED AS EARNINGS BEFORE INTEREST, TAXES, DEPRECIATION AND AMORTIZATION DIVIDED BY PRINCIPAL AND INTEREST LOAN PAYMENT.

9. BORROWER SHALL COMPLY WITH ALL ENVIRONMENTAL LAWS AND REGULATION.

10. THE PREPAYMENT PENALTY SHALL BE IMPOSED IN THE FOLLOWING MANNER:

IF THE BORROWER PREPAYS MORE THAN 20 PERCENT OF THE OUTSTANDING PRINCIPAL BALANCE (CUMULATIVE PERCENTAGE FOR EACH YEAR) DURING THE FIRST THREE YEARS, PREPAYMENT PENALTY WILL BE ASSESSED WITH DESCENDING SCHEDULE STARTING FROM 2% OF THE PREPAYMENT AMOUNT (2% - 1ST, 1.5% - 2ND YEAR & 1% - 3RD YEAR). PREPAYMENT PENALTY MAY BE WAIVED IF A PROPERTY IS SOLD.

THIS LOAN COVENANTS AND CONDITIONS IS EXECUTED ON SEPTEMBER 6, 2007.

BORROWER:

NEMRAC HOSPITALITY GROUP, LLC

By:
FAHMI ELMENOUFI, Managing Member of NEMRAC
HOSPITALITY GROUP, LLC

LENDER:

WILSHIRE STATE BANK

By:
Authorized Signer

Summary Appraisal Report of

WYNDHAM ANAHEIM PARK HOTEL
222 WEST HOUSTON AVENUE
FULLERTON, CALIFORNIA 92832

Date of Value

FEBRUARY 28, 2007

Prepared For

ALAN CARRINGTON
NATIONAL INVESTORS MORTGAGE, INC.
11324 OSHIA LANE
VALLEY CENTER, CALIFORNIA 92082

Prepared By

EDWARD D. PTACEK
ANALYTIC REAL ESTATE SERVICES, LLC
2612 NORTH YELLOWWOOD DRIVE
WESTLAKE VILLAGE, CALIFORNIA  91362-5560

# Edward D. Ptacek

ANALYTIC REAL ESTATE SERVICES, LLC
*Real Estate Appraiser & Consultant*
State Certified General Appraiser AG025982

2612 N. Yellowwood Drive
Westlake Village, CA 91362-5560
Phone: (818) 274-1479
Facsimile: (800) 647-6686
E-Mail: edwardptacek@sbcglobal.net

February 28, 2007

**Writer's Direct Line: (818) 274-1479**

National Investors Mortgage, Inc.
Attn: Mr. Alan Carrington
3200 Bristol Street, Suite 700
Costa Mesa, California 92626

Re:   Wyndham Anaheim Park Hotel
222 W. Houston Avenue
Fullerton, California 92832

Dear Mr. Carrington:

Pursuant to your request, we have prepared a **Complete Appraisal**, and reported our findings in this **Summary Appraisal Report** of the above-referenced property for the purpose of formulating and expressing our opinion regarding the "As Is" Market Value as of February 28, 2007, as well as the First Year Stabilized Value in 2008.

Based on our inspection of the subject property, surrounding market area, as well as on our analysis of relevant market data, and the preparation of the various valuation studies, we are of the opinion that the **"As Is" Market Value of Fee Simple interest** in the subject property as of the above-referenced date of value of February 28, 2007, and subject to the various limiting conditions included herein, is:

## TWENTY SIX MILLION DOLLARS

## **$26,000,000**

In addition, we are of the opinion that the **First Year Stabilized Value, for the Calendar Year 2008**, of the Fee Simple Interest in the subject property, and subject to the various limiting conditions included herein, is:

## THIRTY ONE MILLION DOLLARS

## **$31,000,000**

*Edward D. Ptacek*

National Investors Mortgage, Inc.
Attn: Mr. Alan Carrington
February 28, 2007
Page 2

This appraisal has been prepared in conformance with the requirements of the Uniform Standards of Professional Appraisal Practice (USPAP) of the Appraisal Foundation; applicable federal and state laws; and regulations of the California Office of Real Estate Appraisers (OREA). This letter of transmittal is part of the attached report containing relevant information regarding the property and our analysis.

Respectfully submitted,

Edward D. Ptacek
State Certification #AG025982

EDP:cg

*Edward D. Ptacek*

# Table of Contents

Page

Letter of Transmittal ............................................... 1

Limiting Conditions & Underlying Assumptions ............................ 3

Certificate of the Appraiser ........................................... 5

Summary of Salient Facts ............................................ 7

Appraisal Introduction .............................................. 10

Environs ....................................................... 14

Site Description .................................................. 17

Improvement Description ............................................ 19

Highest & Best Use/Appraisal Methodology ............................... 28

Sales Comparison Approach .......................................... 30

Income Capitalization Approach ....................................... 42

Value Correlation/Exposure Time ...................................... 54

ADDENDA

Subject Property Photographs
Pictures of Sales Comparables
Pictures of Hotel Room Rate Comparables
Property Management Reports
Smith Travel Research "STR" Report
Commitment for Title Insurance Policy
Property Profile Report
Claritas Site Report: Demographics
Wyndham Franchise Agreement, Confirmation
Qualifications of Edward D. Ptacek

# Summary Appraisal Report of

WYNDHAM ANAHEIM PARK HOTEL
222 WEST HOUSTON AVENUE
FULLERTON, CALIFORNIA 92832

## Date of Value

MAY 30, 2008

## Prepared For

NEMRAC HOSPITALITY GROUP, LLC
222 WEST HOUSTON AVENUE
FULLERTON, CALIFORNIA 92832

## Prepared By

EDWARD D. PTACEK
ANALYTIC REAL ESTATE SERVICES, LLC
2612 NORTH YELLOWWOOD DRIVE
WESTLAKE VILLAGE, CALIFORNIA 91362-5560

# Edward D. Ptacek

ANALYTIC REAL ESTATE SERVICES, LLC
*Real Estate Appraiser & Consultant*
State Certified General Appraiser AG025982

2612 N. Yellowwood Drive
Westlake Village, CA  91362-5560
Phone: (818) 404-8969
Facsimile: (800) 647-6686
E-Mail: eptacek@analyticrealestateservices.com

May 30, 2008

**Writer's Direct Line:  (818) 404-8969**

NEMRAC Hospitality Group, LLC
222 West Houston Avenue
Fullerton, California 92832

Re:   Wyndham Anaheim Park Hotel
222 W. Houston Avenue
Fullerton, California 92832

Dear Sir:

Pursuant to your request, we have prepared a **Complete Appraisal**, and reported our findings in this **Summary Appraisal Report** of the above-referenced property for the purpose of formulating and expressing our opinion regarding the "As Is" Market Value as of May 30, 2008, as well as the First Year Stabilized Value in 2009.

Based on our inspection of the subject property, surrounding market area, as well as on our analysis of relevant market data, and the preparation of the various valuation studies, we are of the opinion that the **"As Is" Market Value** of the fee simple interest in the subject property as of the above-referenced date of value of May 30, 2008, and subject to the various limiting conditions included herein, is:

<div align="center">

**THIRTY THREE MILLION DOLLARS**
**$33,000,000**

</div>

In addition, we are of the opinion that the **First Year Stabilized Value, for the Calendar Year 2009**, of the Fee Simple Interest in the subject property, and subject to the various limiting conditions included herein, is:

<div align="center">

**Thirty Seven Million Dollars**
**$37,000,000**

</div>

*Analytic Real Estate Services, LLC*

NEMRAC Hospitality Group, LLC
May 30, 2008
Page 2

This appraisal has been prepared in conformance with the requirements of the Uniform Standards
of Professional Appraisal Practice (USPAP) of the Appraisal Foundation; applicable federal and
state laws; and regulations of the California Office of Real Estate Appraisers (OREA). This letter
of transmittal is part of the attached report containing relevant information regarding the property
and our analysis.

Respectfully submitted,

Edward D. Ptacek
State Certification #AG025982

EDP:cg

*Analytic Real Estate Services, LLC*

# Table of Contents

**Page**

Letter of Transmittal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Limiting Conditions & Underlying Assumptions . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Certificate of the Appraiser . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
Summary of Salient Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
Appraisal Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
Environs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
Site Description . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
Improvement Description . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
Highest & Best Use/Appraisal Methodology . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
Sales Comparison Approach . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
Income Capitalization Approach . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
Value Correlation/Exposure Time . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

ADDENDA

Subject Property Photographs
Pictures of Sales Comparables
Pictures of Hotel Room Rate Comparables
Property Management Reports including Hotel Room Rate Schedule
Smith Travel Research "STR" Reports
Property Profile Report
Demographic Reports
Qualifications of Edward D. Ptacek

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Manuel Real and the assigned discovery Magistrate Judge is Andrew J. Wistrich.

The case number on all documents filed with the Court should read as follows:

## CV10- 1868 R (AJWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

Unless otherwise ordered, the United States District Judge assigned to this case will hear and determine all discovery related motions.

————————————————————————————————————

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [X] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:
Leslie Richards, Esq., (CA SBN 94672)
Law Offices of Leslie Richards, PC
15205 Burbank Blvd., Suite A
Sherman Oaks, CA 91411

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEMRAC HOSPITALITY GROUP, LLC, et al. | CASE NUMBER |
| PLAINTIFF(S) v. | CV10 1868   R (AJWx) |
| WILSHIRE STATE BANK, etc., et al.<br><br>See attached caption page for full list of parties<br>DEFENDANT(S). | **SUMMONS** |

TO:   DEFENDANT(S): Wilshire State Bank, a California corporation, Joanne Kim, Seung Hon Kang, Michelle Yun, Dayna Cho, Taesung Juhn dba Top Realty, Young Soon Juhn, Steve Shin, Remax Realty, Goldenpark, LLC, a California llc., Sleepland, Inc., a California Corp., Bestland LLC, a California llc, Catherine Kyung Kim, Young H. Shin, Chicago Title Co., Does 1-100

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, Law Offices of Leslie Richards, PC____, whose address is 15205 Burbank Blvd., Suite A, Los Angeles, CA 91411_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: MAR 1 6 2010

By: _____
CHRISTOPHER POWERS
Deputy Clerk
(Seal of the Court)

SEAL

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

Law Offices of Leslie Richards, P.C.
Leslie Richards (CA SBN 94672)
15205 Burbank Boulevard, Suite A
Sherman Oaks, California 91411
Tel:   (818) 997-9955
Fax:   (818) 997-9965
ladylaw@leslierichards.com

Attorney for Plaintiffs,
FAHMI EL MENOUFI, NEMRAC
HOSPITALITY GROUP, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEMRAC HOSPITALITY GROUP, LLC, a Nevada limited liability company; AMERICAN DIVERSIFIED MANAGEMENT, INC. a Nevada corporation; and FAHMI EL MENOUFI, aka FRED MENOUFI, an individual and ANTHONY M. HAISMAN, an individual; THE APH-222 W. HOUSTON AVE. TRUST | CASE NO.:  CV10 1868 R AJWx |

Plaintiffs,

v.

WILSHIRE STATE BANK, a California corporation; JOANNE KIM, an individual; SEUNG HON KANG, and individual; MICHELLE YUN, an individual; DAYNA CHO, an individual; TAESUNG JUHN, dba TOP REALTY; YOUNG SOON JUHN, an individual; STEVE SHIN, an individual; REMAX REALTY, a business entity of unknown form; GOLDENPARK, LLC, a California limited liability company; SLEEPLAND, INC., a California corporation; BESTLAND. LLC, a California limited liability company; CATHERINE KYUNG KIM, an individual; YOUNG H. SHIN, an individual; CHICAGO TITLE COMPANY, a corporation; and DOES 1 through 10 , inclusive,

Defendants.

1

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| | |
|---|---|
| **I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)<br>NEMRAC HOSPITALITY GROUP, LLC, a Nevada LLC, AMERICAN DIVERSIFIED MANAGEMENT, INC., a Nevada corp., FAHMI EL MENOUFI, aka FRED MENOUFI, ANTHONY HAISMAN, etc. et al.<br><br>SEE ATTACHED CAPTION | **DEFENDANTS**<br>WILSHIRE STATE BANK, JOANNE KIM, SEUNG HONG KANG, MICHELLE YUN, DAYNA CHO, TAESUNG JUHN, YOUNG SOON JUHN, STEVE SHIN, REMAX REALTY, GOLDENPARK, LLC etc et al.<br><br>SEE ATTACHED CAPTION |
| **(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br><br>Leslie Richards, Esq., (CA SBN 94672)<br>Law Offices of Leslie Richards, PC<br>15205 Burbank Blvd., Suite A, Sherman Oaks, CA 91411 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☑ 1 | Incorporated or Principal Place of Business in this State | ☑ 4 | ☑ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify):    ☐ 6 Multi-District Litigation    ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes   ☐ No    ☑ **MONEY DEMANDED IN COMPLAINT: $** 30,000,000 Plus

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
18 USC 1962(b), 18 USC 1344(2)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☑ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | **IMMIGRATION** | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus- Alien Detainee | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:**    Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑No ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| ORANGE: NEMRAC, AMERICAN DIVERSIFIED MANAGEMENT, INC., FRED MENOUFI, ANTHONY HAISMAN LOS ANGELES: APH - 222 W HOUSTON AVE TRUST, *ORANGE* | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES: Wilshire State Bank, Joanne Kim, Catherine Kyung Kim, Young Soon Juhn, Taesung Juhn dba Top Realty, Steve Shin, Remax Realty, Chicago Title Company, Bestland, Goldenpark LLC | San Diego: Sleepland, Inc. |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES and/or ORANGE - RICO, Fraud, Breach of Fiduciary Duty, Breach of Covenant of Good Faith and Fair Dealing, etc. | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _[signature]_  Date March 15, 2010

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |